

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-15-00013-CR

JOSHUA M. WILLIS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 19th District Court
McLennan County, Texas
Trial Court No. 2013-384-C1, Honorable Ralph T. Strother, Presiding

July 14, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Joshua M. Willis, was convicted of robbery and assessed a sixty year sentence. He attacks his conviction through four issues, contending that the trial court erred in 1) overruling his *Batson* challenge, 2) failing to instruct the jury on mistake of fact, 3) overruling his objection to the State's closing argument during the guilt/innocence phase of the trial, and 4) overruling his objection to the State's closing argument during the punishment phase of the trial. We affirm.

*Background*

On November 14, 2012, Ernesto Lopez attempted to repossess a Grand Marquis car parked by a barber shop. He had matched the license number of the vehicle to the number on his repossession order and had hooked up the vehicle to his tow truck when appellant ran out of the barber shop. As appellant ran from the shop, he could be heard yelling that Lopez had the wrong car. Following this was appellant's unsuccessful attempt to disconnect the car from the tow boom, his effort to enter the tow truck and take Lopez's keys, his scuffle with Lopez wherein Lopez was hit and bit, and his taking of Lopez's cell phone. And, after appellant yelled for someone to "grab his gat out of the vehicle," Lopez apparently disconnected the car from the tow truck. At that point, appellant entered the Marquis and drove away.

Appellant's mother owned the car, which apparently was collateral for a delinquent loan. A police officer testified that appellant's mother told him she had given the loan money to appellant, and he was supposed to repay the loan. However, she denied at trial that appellant knew the vehicle was subject to a loan.

*Batson Challenge*

In his first issue, appellant claims that the trial court erred in overruling his contention that the State improperly used peremptory strikes against the only two African-American jurors left on the jury panel. We overrule the issue.

The Equal Protection Clause of the United States Constitution prohibits the State from exercising its peremptory strikes solely on the basis of race. *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S. Ct. 1712, 1719, 90 L. Ed.2d 69 (1986). Several steps are required in establishing that the challenges were so exercised. The defendant must

initially make a prima facie showing of racial discrimination, which then obligates the State to articulate a race-neutral explanation for exercising its challenges in the manner it did. *Baston,* 476 U.S. 97, 106 S. Ct. 1723-24; *Blackman v. State*, 414 S.W.3d 757, 764 (Tex. Crim. App. 2013). If such an explanation is proffered, then the trial court reviews the circumstances to ultimately decide if the State engaged in purposeful discrimination. *Blackman v. State*, 414 S.W.3d at 765.

Next, we cannot interfere with the trial court's decision unless it is clearly erroneous. *Id.*; *Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004). In assessing whether it is, we consider the entire *voir dire* record. *Watkins v. State*, 245 S.W.3d 444, 448 (Tex. Crim. App. 2008). So too must we not only 1) focus on the genuineness of the explanation offered by the State, not its reasonableness, *Gibson v. State*, 144 S.W.3d at 533-34, but also 2) remember that the explanation need not rise to a level justifying a challenge for cause. *Blackman v. State*, 414 S.W.3d at 770.

The venire members underlying appellant's *Batson* challenge here were Jurors Nos. 14 and 29. No one disputes that they were black. And, when accused of striking them from the venire due to their race, the State proffered the following explanation for removing them. According to the prosecutor, "one of her things was that she [Juror No. 14] was very compassionate. I don't want somebody who's compassionate on my jury. We struck No. 15 for the same reason who was a white lady . . . ."[1] Concerning Juror No. 29, the prosecutor stated that "I was trying to get rid of as many teachers as I could off the panel. Let me see what she said. Oh, yeah, she said she liked to help people. I don't - - that's exactly who I'm trying to get off is somebody who is going to help people

---

[1] Juror No. 14 stated that her weakness was "caring too much." Juror No. 15 stated that she was a compassionate person.

and be compassionate."[2]  Upon hearing these explanations, the trial court overruled appellant's challenge.

The explanations offered by the State were race-neutral.  Because they were, appellant had the burden to persuade the trial court, by a preponderance of the evidence, that they were simply a pretext for discrimination.  *See Blackman v. State*, 414 S.W.3d at 765 (stating that when a race neutral explanation is proffered, the defendant has the burden of persuasion to prove by a preponderance of the evidence that the State engaged in purposeful discrimination). However, appellant did not attempt to rebut or discredit the explanation.  Moreover, the trial court was free to view the prosecutor's assertion that he struck non-black venire members for the same reason "as an indication that his strike[s] against . . . [Jurors Nos. 14 and 29] [were] not racially motivated."  *Id.* at 770. Under these circumstances, we cannot say that the trial court clearly erred in overruling the *Batson* challenge levied by appellant.   When the explanation is facially plausible and not contradicted, the trial court does not err in overruling the challenge even if the reason given by the State proves to be incorrect. *Ford v. State,* 1 S.W. 3d 691, 693-94 (Tex. Crim. App. 1999).[3]

---

[2] In response to the State's question as to how a juror might judge whether a person is truthful, Juror No. 29 stated: . . . I don't know how I could prove they were guilty or innocent, just listen to them and see what their side is to see if they - - if I can help them to talk to them to see where we can be at, and then I can't say they're innocent or guilty until they're proven."

[3]Although appellant also contends before us that other school teachers were not challenged, he did not raise that argument to the trial court.  More importantly, he cites us to no evidence indicating that the purported school teachers who remained on the venire also described themselves as "compassionate" (though one would hope they were).  And, it could be inferred from the State's comments that the removal of compassionate people from the venire was of paramount consideration.

4

*Mistake of Fact*

Next, appellant asserts the trial court erred in denying his request for a jury instruction on mistake of fact. We overrule the issue.

A defendant is entitled to an instruction on any defensive issue raised by the evidence whether the evidence is weak, strong, unimpeached, or uncontradicted. *Celis v. State,* 416 S.W.3d 419, 430 (Tex. Crim. App. 2013); *Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008). It is a defense to prosecution if the defendant, through mistake, formed a reasonable belief about a matter of fact if his mistaken belief negated the culpability required for the commission of the offense. TEX. PENAL CODE ANN. § 8.02(a) (West 2011).

Next, the offense of robbery occurs when a person, "in the course of committing theft . . . and with intent to obtain or maintain control of the property," intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 29.02(a)(1) (West 2011). Finally, one commits theft if he "unlawfully appropriates property with intent to deprive the owner of" it. *Id.* § 31.03(a) (West Supp. 2014).

Here, appellant contends that he was entitled to the mistake instruction apparently because he did not know the car was subject to a loan and lien, which loan was in default. That somehow affected the element of theft encompassed in the crime of robbery, as we understand his argument. Yet, the indictment did not link the theft to any particular item of property. Furthermore, the evidence of record disclosed that appellant not only took the car but also attempted to take Lopez's vehicle keys and actually took, for a short period of time, Lopez's cell phone. Appellant does not dispute doing so. Nor does he allege that he thought the keys and cell phone belonged to him

5

or his mother or anyone other than Lopez.[4]  So, if we were to assume that the record supported a mistake instruction *viz* his exercising control over the car, it did not support such an instruction *viz* his unlawful appropriation of Lopez's property.  This, in turn, leads us to conclude that the purported mistake upon which appellant relied did not negate his culpability for robbery since he was in the course of committing theft even if mistaken about the loan on the car.  The trial court did not err in omitting the defensive instruction.

*Argument during Guilt/Innocence*

During closing argument at the guilt/innocence phase of the trial, the State asked the jury, "Do you all want him walking out this courthouse with you?"  Appellant objected, but the court overruled it.  Appellant avers before us that the trial court erred in overruling the objection because the statement was calculated to scare and prejudice the jury, and the prosecutor knew that appellant had other charges pending against him and he would not be leaving jail.  We overrule the issue.

Four permissible areas of jury argument are 1) summation of the evidence, 2) reasonable deduction from the evidence, 3) answer to argument of opposing counsel, and 4) pleas for law enforcement.  *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008).  In determining whether argument properly fell within those four areas, we consider the entire argument and not isolated excerpts.  *See Mosley v. State*, 686 S.W.2d 180, 183 (Tex. Crim. App. 1985).

The challenged statement at bar was made within the following context:

[STATE:]  . . . You know, they're asking you to find the lesser included - - find him

---

[4] While appellant may argue that he did not complete the theft of either the keys or cell phone, a completed theft is not needed to support a conviction for robbery.  *See Holberg v. State*, 425 S.W.3d 282, 287 (Tex. Crim. App. 2014) (stating that robbery requires only attempted theft).

> guilty of a lesser included misdemeanor. Let me ask you. Do you all want him walking out this courthouse with you?
>
> MS. TUEGEL: Objection, Your Honor. That's improper argument.
>
> THE COURT: Overruled.
>
> MR. MOODY: Or do you all want him where he belongs? I mean that's the choice in front of you. You all think this is misdemeanor conduct? Boy, I don't.

Asking the jury if it wants the defendant "running loose and free" in the community is a proper plea for law enforcement. *See Ledesma v. State*, 828 S.W.2d 560, 563-64 (Tex. App—El Paso 1992, no pet.). We see little distinction between the argument in *Ledesma* and the one before us. Furthermore, the State did not know whether appellant would be convicted of any other pending charge against him and thus might be free at some point if not convicted here. Consequently, we cannot say that the trial court abused its discretion in overruling appellant's objection. *York v. State*, 258 S.W.3d 712, 717 (Tex. App—Waco 2008, pet. ref'd) (describing the standard of review as abused discretion).

*Argument during Punishment Phase*

Appellant also complains of the State's jury argument during the punishment phase. The argument in question consisted of the prosecutor saying ". . . maybe its [sic] possible there was another reason he didn't want anybody getting in that car. Maybe there was dope in that car." Appellant objected, contending that there was no evidence of dope in the car. We overrule the issue.

A prosecutor may not use final argument to invite the jury to speculate about matters that are outside of or unsupported in the record. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). And, for purposes of this issue, we assume *arguendo*

7

that no evidence appeared of record indicating that drugs were in the Marquis. Nonetheless, of record during the punishment phase was evidence that 1) appellant had been found with drugs in his possession on multiple occasions, 2) he had sold drugs to undercover police officers on multiple occasions, 3) he had run from police on a previous occasion and thrown drugs on the ground as he did so, 4) he had previous drug convictions, 5) he had a history of carrying firearms, and 6) the barbershop appellant was in when Lopez attempted to repossess the vehicle was a location well known to police as a distribution site for various controlled substances. Given that the matter of drugs and appellant's involvement with them was already of record, we cannot say that the State's reference to drugs being in the car harmed him or otherwise affected the result in any way. The skunk was already in the jury box before the prosecutor again tried to put it there.

Accordingly, the judgment is affirmed.

Per Curiam

Do not publish.

8